# IN THE UNITED STATES COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff | CIVIL ACTION – LAW |
| v. | JURY TRIAL DEMANDED |
| DEBRA McCARTHY, | |
| Defendant | NO. |

**EXHIBIT "A" TO NOTICE FOR REMOVAL**

**The Jauregui Law Firm**
BY: RAUL JAUREGUI, ESQUIRE
ATTORNEY I.D. NO. 92366
720 Arch Street
PO Box 861
Philadelphia, PA 19107
(215) 559-9285
RJ@RaulJauregui.com

Attorney for Plaintiff
"John Doe"

| | |
|---|---|
| John Doe, | **11th JUDICIAL DISTRICT**<br>**Court of Common Pleas for**<br>**Luzerne County** |
| Plaintiff | No. 2021-00941 |
| VS. | |
| Debra McCarthy, | of _____ |
| Defendant | **Jury Trial Demanded** |

## COMPLAINT – CIVIL ACTION

### NOTICE TO DEFEND

**NOTICE** You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.
Philadelphia Bar Association Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333 TTY (215) 451-6197

**AVISO** Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.
Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333 TTY (215) 451-6197

Doe v. McCarthy
Complaint Page NO. 1

The Jauregui Law Firm
BY: RAUL JAUREGUI, ESQUIRE
ATTORNEY I.D. NO. 92366
720 Arch Street
PO Box 861
Philadelphia, PA 19107
(215) 559-9285
RJ@RaulJauregui.com

Attorney for Plaintiff,
"John Doe"

| | |
|---|---|
| John Doe, | 11th JUDICIAL DISTRICT Court of Common Pleas for Luzerne County |
| Plaintiff | No. 2021-00941 |
| VS. | of _____ |
| Debra McCarthy, | Jury Trial Demanded |
| Defendant | |

## COMPLAINT – CIVIL ACTION

### Parties to this Action:

1. Plaintiff John Doe is a resident of Luzerne County, Pennsylvania.

2. Defendant Debra McCarthy is believed to be a resident of New York, with last known residential address at 27 Stonehenge Road, Rockville Centre, NY 11570.

### John Doe's Averments of Debra McCarthy's Defamatory Conduct:

3. John Doe and Jane Roe are students at a Pennsylvania private institution where they met, had sexual relations for some time, and then stopped talking to each other.

4. At some point in a subsequent semester, John Doe found a nude Jane Roe having what appeared to be sexual intercourse with another student who appeared to be significantly inebriated.

5. John Doe found this unexpected scene as he opened the door to his own dorm room where neither Jane Roe nor the student she appeared to be having sexual intercourse with live.

6. Jane Roe then forced her way into John Doe's room, and proceeded to have sexual intercourse with him.

7. The next morning, video footage shows that John Doe politely escorted a smiling Jane Roe back to her own dorm.

8. Later that day, Jane Roe stated that she had been drugged and sexually assaulted.

9. On or about September 16, 2020, defendant Debra McCarthy wrote an email to Doe's school administrators.

10. Some of McCarthy's statements in that email are merely transcribed here, in identity redacted form, to comply with FERPA:

    • "[John Doe] has told another student that [Student 1] was forcing [Jane Roe] as she was blacked out to perform a sex act upon him and that [John Doe] got [Jane Roe] away from him and then performed a non consensual intercourse on [Jane Roe]."

    • "[John Doe] is bragging to other [name of school] Students he had 3 hours of non consensual Sex on [---] blacked out [Jane Roe]."

- "[Jane Roe] can not remember anything other than being in hallway of Dormitory and believes she was roofied in a dorm room that [Student 1] was in earlier in the evening."
- "While the investigation is taking place how [Jane Roe] can feel safe with a 6 ft 300 pound assailant and his co perpetrator still on campus."[sic].

11. McCarthy made no effort to contact John Doe to check the truth of her defamatory and malicious assertions as stated in that email.

12. The matters that McCarthy stated in this email are stated as fact, are false, and thus defame, as well as defame per se, and put John Doe in a false light.

13. McCarthy wrote this email meaning to get John Doe disciplined at and maybe expelled from his school, without absolutely any regard for his privacy.

14. It is not known but averred on information and belief that defendant McCarthy must have had other defamatory communications about Doe with Doe's school and others.

15. McCarthy's defamation campaign against Doe has destroyed his career and caused him embarrassment, loss of reputation, and loss of his good name in his community.

## DEFAMATION

16. McCarthy defamed Doe in at least one email communication on or about September 16, 2020, which she sent to his school.

17. McCarthy's defamation conduct against John Doe meets all the elements of that claim under Pennsylvania law.

18. McCarthy's email is defamatory in character as she falsely states that John Doe raped Jane Roe "...then performed a non consensual intercourse on [Jane Roe]", continues to falsely assert that John Doe bragged to his friends of having "...3 hours of non consensual Sex on [---] blacked out [Jane Roe]....", proceeds to admit that all of McCarthy's statements have no basis in fact because "...[Jane Roe] can not remember anything...", and finally falsely declare that John Doe is a "...co perpetrator still on campus..." who is a risk to Jane Roe's safety.

19. McCarthy published this defamatory communication to at the very least the person who received the e-mail cited in this complaint, an administrator at John Doe's school.

20. McCarthy's defamatory communication in this email (and perhaps others) applies to Juan Doe specifically because McCarthy mentions Juan Doe by name 4 times and several other times by implication.

21. Any recipient of this email, and certainly the administrator at John Doe's school who did receive it, would understand and in fact did understand the defamatory meaning of McCarthy's falsely stated factual statements concerning John Doe.

22. Similarly, any recipient of this email, and certainly the administrator at John Doe's school who did receive it, understood that this email applied to John Doe.

23. As a result of McCarthy's publication of this email John Doe's career has been permanently and irreparably harmed. The same is true of his educational record.

24. McCarthy's publication of this email, which admits both she and Jane Roe know nothing, abused any conditionally privileged occasion that might have applied

because she sent it with absolutely no regard for the falsehoods it states and which she admits she knew about at that time in the very same email.

25. McCarthy is not a student at John Doe's school. She is not believed to be enrolled in any school at all. She is not believed to even have been in Pennsylvania at the time of her defamatory statements or of the underlying events she transmogrified to defame John Doe.

26. McCarthy could not in good faith write that email as a third party complaint because she admits that Jane Roe recalls nothing which means she manufactured all the vitriol stated in the September 16, 2020 email and knowingly published it to harm John Doe.

27. McCarthy's email contains statements that are capable of defamatory meaning against John Doe.

28. McCarthy's email is not a communication with law enforcement or any other agency that might allow for privilege, even under these outrageous facts.

29. These statements' defamatory meaning stems from the inescapable fact that McCarthy's words tend to harm John Doe's reputation as to lower him in the estimation of the very community where McCarthy published those words: John Doe's school, where she falsely labeled him a man who would rape Jane Roe for three hours and then brag about it to his friends.

30. Similarly, McCarthy's statements have defamatory meaning because they deter third persons—namely students at John Doe's school—from associating or dealing with John Doe.

31. McCarthy wrote her statements about John Doe with malice.

32. McCarthy published her statements about John Doe with malice.

33. McCarthy's statements about John Doe tended to blacken John Doe's reputation.

34. McCarthy's statements about John Doe tended to expose John Doe to public hatred, contempt, or ridicule.

35. McCarthy's statements, written with the specific purpose of ending John Doe's enrollment in his academic institution, tended to injure John Doe in his business or profession, which is the business of being a college student, and the profession of being a student in good standing at his school.

36. As a result of McCarthy's statements, John Doe suffered harm that has grievously fractured his standing in the community of his peer students, professors, staff, administrators and others at his educational institution.

37. As a result of McCarthy's statements, John Doe suffered harm that has grievously fractured his standing in the community where he grew up, went to school, and lives.

38. Nothing in the context of McCarthy's statements about John Doe makes it possible to interpret them as non-defamatory.

39. It is not only reasonable, but inescapable, that the plain reading of McCarthy's statements about John Doe in this email, and likely in other communications that McCarthy published and which are not yet in his possession, defames him.

40. The impression that McCarthy's statements about John Doe would naturally engender, in the mind of the average person among whom they were intended to circulate, is that he is in fact a rapist who would brag about that heinous act to his friends.

41. Everything that McCarthy states about John Doe in this email, which is false, she stated as fact, and thus she stated defamatorily.

42. Nothing in McCarthy's statements about John Doe is an expression of her opinion of John Doe, because she stated everything as fact.

43. In addition, McCarthy's statements are actionable defamation because they imply undisclosed, false, and defamatory facts about Doe.

44. These implied facts include that he took advantage of a drunken Jane Roe, that he did so for three hours, and that then he bragged about that falsely stated heinous conduct to his own friends.

45. Finally, McCarthy's statements are actionable defamation because they describe, as fact, or else they imply, Doe's promiscuity, including McCarthy's factual description of John Doe as a "co perpetrator" in a falsely stated yet gruesome rape.

### DEFAMATION PER SE

46. McCarthy defamed per se John Doe in at least one email communication on or about September 16, 2020, which she sent to his school in Pennsylvania.

47. McCarthy's defamation per se conduct against John Doe meets all the elements of that claim under Pennsylvania law.

48. McCarthy's words impute John Doe with several criminal offenses including falsely claming he raped a blacked out Jane Roe for three hours and participated as a "co perpetrator" in the drugging of Jane Roe.

49. McCarthy's words impute John Doe with serious sexual misconduct.

50. All of McCarthy's facts against John Doe are false.

51. All of McCarthy's falsely-stated facts against John Doe in terms of his criminal behavior against Jane Roe, and his engagement in serious sexual misconduct against Jane Roe, defame him per se.

### FALSE LIGHT

52. McCarthy's publicity about John Doe in at least one email communication on or about September 16, 2020 which she sent to his school in Pennsylvania placed John Doe in a false light and invaded his privacy.

53. McCarthy's false light for invasion of privacy conduct against John Doe meets all the elements of that tort under Pennsylvania law.

54. McCarthy gave publicity to matters concerning John Doe that placed him before the Pennsylvania public in a false light, thus invading his privacy, when she published her falsely-stated email of September 16, 2020 and identified John Doe by name at least four times all the while stating devastatingly horrid facts against John Doe which are entirely false, as McCarthy admits she knew.

55. The false light in which McCarthy's email of September 16, 2020, and likely other communications yet to be identified, placed John Doe in the light of a rapist who would brag about that heinous act. This would be, and inescapably, is, highly offensive to a reasonable person as well as to John Doe.

56. McCarthy had to have acted in reckless disregard as to the falsity of the matters she publicized about Doe because she was not there to have witnessed what happened, and in addition as she admits, Jane Roe recalls nothing, of anything that might have happened.

57. Thus, on or about September 16, 2020, McCarthy recklessly published an email about John Doe which is not true, is highly offensive to a reasonable person, as it calls him a rapist who would brag about it, and implies a call for his expulsion from his school.

58. McCarthy knew she had no way to know this publication was true and she had every reason to know that it was false because, as she admits, Jane Roe recalls nothing.

59. McCarthy published these false-facts with actual malice, not only targeting John Doe, a minor and a student, but also seeking to end his enrollment in his school, all the while not bothering, once, to check the facts, including the dispositive one she admits to knowing: That Jane Roe recalled nothing of what may or may not have happened.

## COUNT I

### Defamation

60. Paragraphs 1 – 59 of this Complaint are incorporated herein by reference.

61. As a direct and proximate result of the acts of the defendant McCarthy's actions and conduct in publication of defamatory communications, plaintiff John Doe has suffered and will continue to suffer as follows:

a.     Loss of his good name.

b.     Loss of his business and/or social reputation.

c.     Loss of earnings capacity.

d.     Shame.

e.     Humiliation.

 f. Loss of enjoyment of life.

62.  Plaintiff avers that his injuries may be of a permanent nature, causing residual problems for the remainder of his lifetime, particularly as he faces a lifetime of possible career-assassinating publication of McCarthy's falsehoods, and claim is made therefore.

63.  Because of the outrageous nature and malicious quality of McCarthy's falsehoods plaintiff makes a claim for punitive damages.

**WHEREFORE,** Plaintiff Juan Doe, in his own right, has been damaged for defamation, and claims damages of the defendant Debra McCarthy for the same.

### COUNT II

### Defamation per se

64.  Paragraphs 1 – 63 of this Complaint are incorporated herein by reference.

65.  As a direct and proximate result of the acts of the defendant McCarthy's actions and conduct in publication of defamatory per se communications, plaintiff John Doe has suffered and will continue to suffer as follows:

a. Loss of his good name.

b. Loss of his business and/or social reputation.

c. Loss of earnings capacity.

d. Shame.

e. Humiliation.

f. Loss of enjoyment of life.

66.  Plaintiff avers that his injuries may be of a permanent nature, causing residual problems for the remainder of his lifetime, particularly as he faces a lifetime of

possible career-assassinating publication of McCarthy's defamatory per-se falsehoods, and claim is made therefore.

67. Because of the outrageous nature and malicious quality of McCarthy's falsehoods plaintiff makes a claim for punitive damages.

**WHEREFORE**, Plaintiff Juan Doe, in his own right, has been damaged for defamation, and claims damages of the defendant Debra McCarthy for the same.

## COUNT III

### False Light

68. Paragraphs 1 – 67 of this Complaint are incorporated herein by reference.

69. As a direct and proximate result of the acts of the defendant McCarthy's actions and conduct in publication of defamatory communications that put him in a false light, plaintiff John Doe has suffered and will continue to suffer as follows:

a.      Loss of his good name.

b.      Loss of his business and/or social reputation.

c.      Loss of earnings capacity.

d.      Shame.

e.      Humiliation.

f.      Loss of enjoyment of life.

70. Plaintiff avers that his injuries may be of a permanent nature, causing residual problems for the remainder of his lifetime, particularly as he faces a lifetime of possible career-assassinating publication of McCarthy's falsehoods, and claim is made therefore.

71. Because of the outrageous nature and malicious quality of McCarthy's

falsehoods plaintiff makes a claim for punitive damages.

**WHEREFORE**, Plaintiff Juan Doe, in his own right, has been damaged for defamation,

and claims damages of the defendant Debra McCarthy for the same.

### Prayer for Relief

**WHEREFORE,** plaintiff Juan Doe demands judgment from defendant Debra McCarthy

in an amount not in excess of $70,000.00 including costs and fees for all three claims.

Respectfully submitted,

**Jauregui Law Firm**

Raul Jauregui
Attorney for Plaintiff Juan Doe

Dated:  January 27, 2021

## VERIFICATION

### Doe v. McCarthy

I swear and affirm that I am the plaintiff in this matter, proceeding under the pseudonym "John Doe" and that I read this Complaint. I state these matters as true to the best of my information, knowledge and belief.  I understand that false statements herein are made subject to penalties of 18 PA.C.S. Sec. 4904 relating to unsworn falsification to authorities.

1/19/21

Dated

Doe v. McCarthy
Complaint Page NO. 14

**Supreme Court of Pennsylvania**
**Court of Common Pleas**
**Civil Cover Sheet**
Luzerne _____ **County**

| For Prothonotary Use Only: | | TIME STAMP |
|---|---|---|
| Docket No: | 2021-00941 | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N   A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

Lead Plaintiff's Name:
John Doe

Lead Defendant's Name:
Debra McCarthy

Are money damages requested? ☒ Yes   ☐ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

Is this a *Class Action Suit*?   ☐ Yes   ☒ No

Is this an *MDJ Appeal*?   ☐ Yes   ☒ No

Name of Plaintiff/Appellant's Attorney: Raul Jauregui, Esq, Jauregui Law Firm

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**S E C T I O N   B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☒ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*Updated 1/1/2011*

FILED PROTHONOTARY LUZERNE COUNTY      01/27/2021   06:59:14 PM      Docket # 202100941

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

### Rule 205.5.    Cover Sheet

(a)(1)  This rule shall apply to all actions governed by the rules of civil procedure except the following:

 (i) actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

 (ii) actions for support, Rules 1910.1 et seq.

 (iii) actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

 (iv) actions for divorce or annulment of marriage, Rules 1920.1 et seq.

 (v) actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

 (vi) voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)  At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)  The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)  The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)  A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)  The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet. The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.